# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS RIVERS ALLIANCE, NEPONSET RIVER WATERSHED ASSOCIATION, CONNECTICUT RIVER WATERSHED COUNSEL, INC. d/b/a CONNECTICUT RIVER CONSERVANCY, MERRIMACK RIVER WATERSHED COUNCIL, TAUNTON RIVER WATERSHED ALLIANCE, OARS, INC., IPSWICH RIVER WATERSHED ASSOCIATION, JONES RIVER WATERSHED ASSOCIATION, AND NORTH AND SOUTH RIVERS WATERSHED ASSOCIATION,<br><br>   Plaintiffs,<br><br>vs.<br><br>E. SCOTT PRUITT, ADMINISTRATOR of U.S. ENVIRONMENTAL PROTECTION AGENCY, in his official capacity, and U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>   Defendants,<br><br>CITY OF LOWELL, MASSACHUSETTS, TOWN OF FRANKLIN, MASSACHUSETTS, and MASSACHUSETTS COALITION FOR WATER RESOURCES STEWARDSHIP.<br><br>   Intervenor-Defendants. | ))))))))))))))))))))))))))))))) | Case No. 17-11825 |

# REPLY IN SUPPORT OF
# JOINT MOTION FOR LEAVE TO INTERVENE

The City of Lowell, Massachusetts ("Lowell"), Town of Franklin, Massachusetts ("Franklin"), and the Massachusetts Coalition for Water Resources Stewardship ("MCWRS") (together, "Intervenors"), by their attorneys and pursuant to Federal Rules of Civil Procedure 24(a) and 24(b), submit their Reply in support of their motion for leave to intervene as Intervenor-Defendants in the above-captioned case and state as follows:

## I. Introduction

Plaintiffs' Response in Opposition to Intervenors' Motion to Intervene misdirects this Court regarding Intervenors' actual interest in this case by wrongly characterizing Intervenors' interest as an attempt to litigate specific Permit conditions already under review in the D.C. Circuit,[1] but Intervenors' interests here do not focus on the legality of those specific Permit conditions. Instead, the Intervenors are defending their unique interests in EPA's grant of the Stay of the Permit's compliance deadlines against Plaintiffs' challenge, which can only happen in this Court. Here, Intervenors' interests are: (1) avoiding unnecessary and potentially wasteful use of limited resources in the event the Stay is lifted, particularly while the D.C. Circuit considers their legality; and (2) advocating EPA's consideration regarding the burden to regulated parties in deciding whether to issue a stay under APA Section 705. These interests are significant, will not be protected by EPA, and therefore warrant intervention as of right under FRCP Rule 24(a).

If this Court denies intervention as of right, however, Intervenors have made the showing necessary to support permissive intervention under Rule 24(b). Intervenors' interests and the positions they will advance have a clear legal and factual nexus to the issues at stake in this suit.

---

[1] *See Center for Regulatory Reasonableness, et al. v. United States Envt'l Prot. Agency*, No 16-1246 and consolidated cases; Memorandum, Exhibit E, ¶¶ 9-10.

## II.   Argument

**A.   Intervenors have the requisite legally protectable interest to intervene.**

Intervenors have presented evidence regarding the potential direct compliance costs they will incur if the Stay is lifted. This evidence goes directly to the question this Court must answer here: whether Intervenors have a legally protectable interest in the outcome of this suit. As discussed in Intervenors' Memorandum in Support of their Motion to Intervene, the significant costs Intervenors would expend complying with the Permit—if the Court holds that EPA improperly granted the Stay—constitute the requisite interest to intervene in this proceeding under FRCP Rule 24(a).

**B.   Intervenors have a direct and substantial interest in the outcome of this lawsuit.**

Plaintiffs' claim that Intervenors do not have a legally protected interest in the outcome of this litigation rings hollow. Plaintiffs argue that Intervenors' economic evidence of potential harm related to the Stay is irrelevant, but then proceed to attack Intervenors' characterization of their economic positions relative to other Massachusetts municipalities that are not participating in the suit. But, nothing in the standard for adjudicating intervention as of right under Rule 24 demands that a putative intervenor be unique among other similarly situated parties that have not chosen to intervene. Plaintiffs cite no law to support this proposition, other than *Donaldson v. U.S.*, 400 U.S. 517 (1971), which is distinguishable because the interests of municipalities facing significant compliance costs are different than the interests of a single taxpayer. Intervenors, the regulated targets of the stayed Permit during its legal review by the D.C. Circuit, have perhaps the greatest interest in the outcome of this lawsuit because any reversal of EPA's stay will cause them to incur immediate, significant, and unrecoverable compliance costs that may be vacated by the D.C. Circuit.

C. **EPA will not adequately protect Intervenors' interest.**

Contrary to Plaintiffs' protestations, EPA will not adequately protect Intervenors' interests. Although EPA and Intervenors share a common goal—to enforce the stay—EPA and Intervenors have fundamentally different reasons for defending a stay. Notably, EPA and the Intervenors oppose one another in the underlying D.C. Circuit case regarding the Permit conditions. Similarly, EPA's interest in this litigation is protecting its broad discretion in granting or denying stays of compliance deadlines delegated to the Agency by Congress pursuant to APA Section 705. To that end, it is EPA's position that, although it did consider the significant costs to Intervenors in granting the Stay, Section 705 does not mandate such consideration. *See* Doc. 19, p. 18. In contrast, Intervenors maintain that EPA's decision would have been improper under Section 705 had the agency failed to consider the cost to Intervenors in this case. Accordingly, Intervenors "will make a more vigorous presentation of the economic side of the argument" during this litigation than will EPA. *New York Pub. Interest Research Group, Inc. v. Regents of U. of State of N. Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (Regents of the State of New York did not adequately represent pharmacists' interests as regulated parties). These divergent legal interests are more than enough to rebut any alleged presumption of adequate representation.

D. **Intervenors' motion was timely.**

Plaintiffs' argument that Intervenors' Motion is untimely is likewise without merit. Intervenors filed their Motion to Intervene one week after EPA filed its Response to Plaintiffs' Motion for Summary Judgment. Had Intervenors filed earlier, they would not have been able to review EPA's brief to determine whether or not EPA would adequately protect their interests in this litigation. Further, the Plaintiffs assented to a motion on January 9, 2018 for another party to

file an amicus brief, undermining their position that the case should be decided on motions already filed. *See* Doc. 41, p. 1.

E.    **This Court has discretion to grant permissive intervention.**

Intervenors also presented sufficient evidence to this Court to justify permissive intervention. First, there are clear, common questions of law and fact between the issues Intervenors will raise and those the existing parties have already briefed.

Second, and most importantly, Plaintiffs' assertion that MCWRS does not have standing to intervene in this matter lacks foundation in both fact and law.[2] An association has standing to bring suit on behalf of its members when: (1) at least one of its members has standing to sue in their own right; (2) the interests it seeks to protect are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit (the "Standing Test"). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.)*, 261 F. Supp. 3d 101 (D. Mass. 2017); *Town of Norwood v. F.E.R.C.*, 202 F.3d 392 (1st Cir. 2000) (finding an association need only "allege that one or more of its members has standing").

1.    **The MCWRS has the requisite Article III standing.**

a.    **MCWRS' members have standing to sue in their own right because they are threatened with an injury causally related to this Action and the Court's decision will determine whether this injury will occur.**

In order to establish standing, an association must show that at least one of its members is suffering or is threatened with injury in fact to a cognizable interest, that the injury is causally connected to the conduct complained of, and that the court is competent to afford relief that will or is likely to redress the injury. *Town of Norwood v. F.E.R.C.*, 202 F.3d 392, 406 (1st Cir.

---

[2] The First Circuit has not yet decided whether a movant seeking to intervene must also establish Article III standing. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 (1st Cir. 2003). Notwithstanding this uncertainty, MCWRS has standing for the reasons discussed in its original Motion to Intervene and in this brief.

2000). MCWRS easily meets this burden. Not only has MCWRS established that approximately thirty of its members are municipalities and districts ("Impacted Members") who will be burdened by the prospect of complying with the severe requirements placed on them by the 2016 Massachusetts Small MS4 General Permit (the "MS4 Permit"), but MCWRS also introduced evidence from the Town of Wayland, Massachusetts ("Wayland") and the City of Haverhill, Massachusetts ("Haverhill") regarding the specific, immediate injuries that those towns will suffer in the absence of relief from this Court.[3] *See* Memorandum In Support of Joint Motion For Leave to Intervene ("Memorandum"), Exhibits C, D, and E, ¶ 3.

For all Impacted Members, compliance costs will be immediately incurred if the Stay is deemed unlawful by this Court. Because MCWRS has demonstrated that its individual members are threatened with a cognizable injury, that the threatened injury is causally connected to the Stay, and that a decision by this Court will likely redress this injury, MCWRS has demonstrated that Wayland and Haverhill, both members of the MCWRS, have standing.

      **b.**    **MCWRS efforts to protect its members from financially burdensome permitting in this matter are germane to its associational purpose.**

To establish standing, an association must show that the interests that it seeks to protect are germane to the association's purpose. *Students for Fair Admissions, Inc.*, 261 F. Supp. 3d at 104. MCWRS meets this burden as an association "devoted to promoting watershed-based policies and regulations founded on scientifically-based and financially responsible approaches that effectively manage and conserve water resources" (its "Purpose"). *See* Memorandum, Exhibit E, ¶ 2. Central to its Purpose, MCWRS protects its members from financially unreasonable regulations. *See id.* MCWRS views financially unreasonable regulations, in part, as

---

[3] Town of Franklin ("Franklin") also submitted a declaration with respect to its individualized harm. *See* Memorandum, Exhibit C. Although Franklin is also seeking to intervene, it is a member of the Coalition and, for the same reasons as Haverhill and Wayland, has standing to assert its claims in this case.

those that either unlawfully increase compliance costs or do so without first considering the impact that these costs will have on communities. MCWRS challenged the MS4 Permit in circuit court because it asserts it is financially unjustified on both of these grounds, and unlikely to be achievable for many MCWRS member communities.  *See id.* at ¶ 6.

In furtherance of its Purpose, MCWRS challenged the MS4 Permit in circuit court and requested that EPA grant the Stay to relieve its members of the burden of complying with the MS4 Permit pending that appeal. MCWRS continues to protect its members against this unreasonable regulation by seeking to challenge Plaintiffs' efforts to remove the Stay in this case.[4] The basis for MCWRS' Motion to Intervene—to ensure that the Stay remains in place—is more than merely relevant to its Purpose; it directly reflects MCWRS' commitment to protecting its members from financially unreasonable regulation.

        **c.**      **Neither the claim asserted nor the relief requested requires the participation of MCWRS' individual members.**

Finally, in order to establishing standing, an association must show that neither the claim asserted nor the relief requested requires the participation of its individual members. *Students for Fair Admissions, Inc.*, 261 F. Supp. 3d at 104. Generally, associational standing is proper when an association seeks prospective relief on behalf of its members. *See Camel Hair and Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1986); *see also Warth v. Seldin*, 422 U.S. 490, 515 (1975) (recognizing associational standing because the "remedy, if granted, will inure to the benefit of those members of the association actually injured."). Further, cases seeking prospective relief are ideal candidates for associational representation, as they

---

[4] As discussed in Section One, *supra*, not only would removing the Stay force permit holders to immediately accrue significant compliance costs, thus opening the floodgates of significant financial hardship for MCWRS' Impacted Members, but it would also funnel this money towards a permit which could be overturned or materially altered in the pending case.  *See also* Memorandum, Exhibit E, ¶¶ 9-10.

generally lack a need for individualized proof regarding the extent of each member's injury.[5] *Id.; Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

MCWRS' request to intervene to support the Stay is, in effect, a request for the Court's declaration that the Stay is valid—a form of prospective relief.  MCWRS, by intervening, seeks to prevent future harm, instead of seeking to recover damages for past harm. Regardless of the magnitude of the harm that threatens each Impacted Member individually, all Impacted Members will benefit from a continued stay of the MS4 Permit, which is precisely the type of matter that courts consider "particularly suited for group representation." *See Camel Hair*, 799 F.2d at 12. Further, whether or not the EPA properly considered all of the legally required factors in its decision to grant the Stay is a purely legal question. *See* Motion to Intervene. Accordingly, no fact-intensive inquiry is necessary to identify the individualized burdens that the MS4 Permit places on MCWRS members in order to decide this case. Because MCWRS seeks prospective relief that requires no individualized showing of injury and because MCWRS' claim is based on a purely legal question, individual participation is not required and associational standing is proper.

### 2. Intervention will not unduly delay or prejudice Plaintiffs.

Finally, intervention in this suit will cause no prejudice or delay. Intervenors have submitted a proposed Cross-Motion for Summary Judgment and are fully prepared to file and

---

[5] The third prong of the Standing Test serves as a safeguard to prevent cases where associational representation is inadequate to protect the interests of the association's members.  This prong is grounded in prudential concerns of "administrative convenience and efficiency," but does not stem from Article III of the Constitution. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 556-7 (1996). An association can generally prove that group representation will increase efficiency and that the association will vigorously pursue the interests of its members within the first two prongs of the Standing Test. *Id.* As discussed in this Section, there is no reason why MCWRS cannot adequately represent the interest of all of its Impacted Members, who all stand to benefit from the continuance of the Stay. Further, having MCWRS represent its Impacted Members, who amount to more than 30 municipalities, will increase the administrative convenience and efficiency of the case. Therefore, the third prong of the Standing Test should not stand as a bar to MCWRS' associational standing to intervene on behalf of its Impacted Members.

brief the same. Contrary to Plaintiffs' assertions, Intervenors do not seek to re-open the administrative record. Intervenors will work with the other parties in this case to avoid duplicative briefing.

F.     **Intervenors' proposed Cross-Motion for Summary Judgment satisfies Rule 24(c).**

Plaintiffs' claim that the proposed Cross-Motion for Summary Judgment Intervenors submitted with their Motion to Intervene does not constitute the required pleading under Rule 24(c) is without merit. Motions, such as those to dismiss or for summary judgment, constitute "pleadings" under Rule 24(c). *See, e.g. Ctr. for Biological Diversity v. Jewell*, CV-15-00019-TUC-JGZ, 2015 WL 13037049, at *1 (D. Ariz. May 12, 2015); *Danner Const. Co., Inc. v. Hillsborough County*, 809-CV-650-T-17TBM, 2009 WL 2525486, at *2 (M.D. Fla. Aug. 17, 2009); *Natl. Cas. Co. v. Davis*, 91 C 01318, 1991 WL 101648, at *1 (N.D. Ill. June 3, 1991); *Barnes v. Harris*, 783 F.3d 1185, 1191 (10th Cir. 2015). Similarly, the First Circuit has rejected "overly technical readings of Rule 24(c)," especially those that deny a motion for leave to intervene on that basis alone. *Peaje Investments LLC v. García-Padilla*, 845 F.3d 505, 515 (1st Cir. 2017). To the extent this Court concludes that Intervenors' proposed Cross-Motion for Summary Judgment does not constitute a "pleading" under Rule 24(c), however, Intervenors request to supplement their motion by filing a proposed answer.

WHEREFORE, the City of Lowell, Massachusetts, Town of Franklin, Massachusetts, and the Massachusetts Coalition for Water Resources Stewardship request that this Court grant them leave to intervene as Intervenor-Defendants in the above-captioned action.

Dated: March 12, 2018								Respectfully submitted,

*/s/ Jennifer L. Garner*_____
Robert D. Cox, Jr.
Jennifer L. Garner
BOWDITCH & DEWEY, LLP
311 Main Street
Worcester, Massachusetts 01608
508.926.3409
rcox@bowditch.com

Christopher D. Pomeroy
AquaLaw PLC
6 South 5th Street
Richmond VA 23219
804.716.9021
chris@AquaLaw.com

Mark G. Cerel
Town of Franklin, Massachusetts
Franklin Municipal Building
355 East Central Street
Franklin, MA 02038
508.520.4964
mcerel@franklin.ma.us

Jeffrey Longsworth
Barnes & Thornburg LLP
1717 Pennsylvania Avenue N.W.
Suite 500
Washington, D.C. 20006-4623
202.408.6918
jeffrey.longsworth@btlaw.com

Fredric Andes
Ashley E. Parr
Barnes & Thornburg LLP
1 North Wacker Drive
Suite 4400
Chicago, Illinois 60606
312.357.1313
fredic.andes@btlaw.com
ashley.parr@btlaw.com

*Counsel for Intervenors*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 12, 2018

                                             *Jennifer L. Garner*